SAMMY CLARK v. STATE OF ARKANSAS

5290                                      427 S. W. 2d 172

Opinion delivered May 6, 1968

*E. V. Trimble* and *Charles E. Scales,* for appellant.

*Joe Purcell,* Attorney General; *Don Langston,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Sammy Clark, appellant herein, was charged with the rape of a nine-year-old girl, and on trial, was found guilty, and his punishment fixed at imprisonment in the State Penitentiary for life. From the judgment so entered, Clark brings this appeal. For reversal, only one point is argued, *viz.*, the court erred in failing to grant a mistrial on the motion of appellant when the state offered to call appellant's wife to testify during the presentation of the state's evidence. However, the motion for new trial also asserts that error was committed by the court in failing to give three requested instructions by appellant, and it is also alleged that the verdict was contrary to the law and evidence. We proceed to a discussion of these contentions, but in reverse order.

The state's evidence reflected that Clark requested a friend to drive him to the home of Anna Marsenburg for the purpose of picking up his stepchildren. This was done, and Clark got his stepdaughter, a child then nine years of age, who lived with her grandmother, Anna Marsenburg, together with her sisters, and the friend drove them to the home where Clark lived with the children's mother, to whom he was married. On arriving

at the house, Clark told the sisters to go outside, but directed the little nine-year-old girl to stay inside. He then asked her to take her clothes off, but upon her refusal, appellant took them off. He then took his own clothes off, and, according to the witness, choked her, and raped her.[1] The little girl stated that she tried to push him off, and tried to get away, and that he hurt her; further, that she did not tell anybody, because she was afraid he would kill her.

The grandmother testified that she found her granddaughter's bloody panties on a Tuesday (the alleged rape having occurred on the previous Sunday); that she questioned and examined the little girl, and observed that she was swollen and bleeding. A subsequent examination was made by a physician, Dr. Bill Floyd.

Dr. Floyd testified that the hymen had been ruptured and torn; that the child's condition had originated probably from one to four days earlier, and that, in his opinion, a forceful penetration was the cause of the injury.

Clark admitted getting the children from the grandmother's house, and taking them to his house, but he denied that he bothered the girl in any way. The evidence obviously, if believed by the jury, was more than ample to sustain the conviction.

It is asserted that the court erred in refusing to give an instruction, at appellant's request, on assault with intent to rape. We do not agree. The evidence on the part of the state was that the act of intercourse was

---

[1] The child testified that she was raped on the couch in the living room. From the record:

"Q. Was he hurting you all the time that you were on this couch?

A. Yes, sir.

Q. And all the time he was on this couch, was his private part in you?

A. Yes, sir."

forcibly committed, and the evidence on the part of the defendant was simply that he did not molest the little girl in any way. It was not error to refuse the instruction. *Whittaker* v. *State,* 171 Ark. 762, 286 S. W. 937.

We think, however, that appellant's requested instruction No. 1 should have been given. This was an instruction defining the offense of carnal abuse, the instruction telling the jury that, if there was reasonable doubt that Clark was guilty of rape, he could still be found guilty of the crime of carnal abuse. The difference in the two offenses is that rape is the carnal knowledge of a female, forcibly and against her will (or without her consent), while carnal abuse is the carnal knowledge of a female under the age of sixteen years. It is immaterial in the latter case whether consent is given or not. While the little girl testified as to acts constituting rape, the jury could possibly have found, since she did not report it, that she consented. The offense of carnal abuse is included in a charge of rape where the female is under sixteen years of age. *Warford and Clift* v. *State,* 214 Ark. 423, 216 S. W. 2d 781. See also *Willis* v. *State,* 221 Ark. 162, 252 S. W. 2d 618.

Instruction No. 2, offered by appellant, was not proper; since counsel for Clark announced at the beginning of the trial that he was waiving his plea of not guilty by reason of insanity; nor was there any evidence offered that appellant was insane.

The principal point relied upon by Clark for reversal relates to the trial court's refusal to grant appellant's motion for a mistrial when the Prosecuting Attorney offered to call Clark's wife to testify during the presentation of the state's evidence. The record reflects the following:

"Mr. Howard:

If your Honor please, I would offer to call this little

girl's mother who is married to this defendant, if the defense counsel would allow her to testify.

Mr. Trimble:

I move for a mistrial, Your Honor. That's a prejudicial offer.

The Court:

Overruled. Save his exceptions. You can call her if you like, but I won't let her testify.

Mr. Howard:

I can't use her if you won't let her testify."

We think the motion for a mistrial should have been granted. Ark. Stat. Ann. § 43-2019 (Repl. 1964) provides:

"In any criminal action in the courts of this state a husband or wife may testify as a witness in behalf of the other when called as such witness by the other spouse, but cannot be called as a witness by the opposite party.[2]"

The state argues that Clark was not prejudiced by the act of the Prosecuting Attorney in attempting to call appellant's wife as a witness against the defendant, and mentions the case of *McDonald* v. *State*, 225 Ark. 38, 279 S. W. 2d 44. There, the defendant's wife was called by the state, was sworn, and seated in the witness chair. The record then reflects that the court asked defense counsel if he had a motion, but the record does not reflect what motion, if any, was made. The opinion recites:

---

[2]The exception is found in the following section, 43-2020, which reads: "In any criminal prosecution a husband and wife may testify against each other in all cases in which an injury has been done by either against the person or property of either."

"'* * * (Discussion off the record.) By the Court: The Court will hold that Mrs. McDonald is incompetent to testify. By Mr. Lookadoo: I want to make an objection to this later. By the Court: Mrs. McDonald, you may stand aside and go back to the witness room. Gentlemen of the Jury, the witness who is leaving the stand is the wife of the defendant, and the Court has held that a wife cannot testify against her husband except where she has been personally injured; the Supreme Court has held that this does not include children. All right, call your next witness.''

In holding that no prejudicial error occurred, we said:

"It appears that appellant made no objection to the court's action and he is, therefore, in no position to complain for the first time here.''

It is thus clear that we did not hold that the action of the attorney for the state was not prejudicial, being unable to pass upon the point under the state of the record.

In the case before us, we think the act of the Prosecuting Attorney was prejudicial. It will be noted that our statute, heretofore quoted, goes a good bit farther than prohibiting a spouse from testifying against the other in a criminal action; it provides that the spouse "cannot be *called* [our emphasis] as a witness by the opposite party.'' Of course, when an effort is made by the state to call one spouse to testify against the other, it would immediately appear to the jury that the called spouse considered the defendant guilty, held no sympathy for the accused, and would like to see the one on trial convicted. This could be particularly damaging where the offense was allegedly committed by a present husband against the wife's child by a previous marriage. While the crime with which the appellant is charged is heinous and revolting, we think the offer to call the wife,

mother of the alleged victim, the prosecution knowing that the statute prohibited her testimony, exceeded the bounds of fairness, so essential to an unprejudiced trial.

Because of the errors herein set forth, the judgment of the Circuit Court is reversed, and the cause remanded for further proceedings.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. I agree that the conviction of appellant must be reversed for failure to give defendant's requested instruction No. 1 on carnal abuse. I do not agree with the majority that there was any prejudicial error in the trial court's refusal to grant a mistrial. I take the majority opinion to state that a wife cannot ever be used as a witness by the State when the offense charged is not against her or her property. If this is the position of the majority, I am certainly in disagreement. In the first place, I cannot agree that we did not hold such an action to be nonprejudicial in *McDonald* v. *State*, 225 Ark. 38, 279 S. W. 2d 44. It is true that the court bolstered its holding by stating that no objection was made by the appellant there to the court's action. The trial court's action there was to hold the wife called by the prosecuting attorney incompetent and to advise the jury of her incompetence. The really pertinent holding was that the offer was not prejudicial. In opening the discussion of this alleged error, this court said:

> "Appellant in Assignment 2 argues that the State erred in offering as a witness appellant's wife knowing that she could not be compelled to testify against her husband (by virtue of §§ 43-2019, 43-2020), and that this offer prejudiced the jury against him. We do not agree."

In the next place, I think that the courts' holding in the *McDonald* case was correct. It is true that our opinions almost universally refer to both the common

law and statutory rules pertaining to testimony of a wife either for or against a husband as going to the competency of the witness. *Inman* v. *State,* 65 Ark. 508, 47 S. W. 558; *Woodard* v. *State,* 84 Ark. 119, 104 S. W. 1109; *Padgett* v. *State,* 125 Ark. 471, 188 S. W. 1158; *Dean* v. *State,* 139 Ark. 433, 214 S. W. 38; *Satterwhite* v. *State,* 139 Ark. 605, 214 S. W. 44; *Witham* v. *State,* 149 Ark. 324, 232 S. W. 437; *Lighter* v. *State,* 157 Ark. 261, 247 S. W. 1065; *Conley* v. *State,* 176 Ark. 654, 3 S. W. 2d 980; *Robison* v. *State,* 191 Ark. 455, 86 S. W. 2d 927; *Reed* v. *State,* 222 Ark. 119, 257 S. W. 2d 362. Actually, however, the rule that one spouse may not testify against the other should be considered as a privilege. Matthews, Evidentiary Privileges & Incompetencies of Husband & Wife, 4 Ark. Law Rev. 426; 8 Wigmore, Evidence § 2227 *et seq.* (McNaughton rev. 1961). I find nothing in our cases which actually treats this rule other than as a privilege, even though the terms "incompetency" and "incompetent" are used. Our General Assembly has specifically referred to the rule as stated in Ark. Stat. Ann. § 43-2019 as the husband-wife privilege. It seems to me that the privilege is that of both the party and the witness, and that either could claim it. 8 Wigmore, Evidence § 2241, p. 254 (McNaughton rev. 1961). This court has recognized that one spouse has a right not to assist in the prosecution of the other when the offense is not against the former. *Taylor* v. *State,* 220 Ark. 953, 251 S. W. 2d 588.

Regardless of whether the rule is treated as creating an incompetency or a privilege, its application may be waived. An objection to the incompetency of a witness must be made as soon as it appears. *Thrash* v. *State,* 146 Ark. 547, 226 S. W. 130. A specific objection is necessary to raise the question of incompetency. *Mosley* v. *Mowhawk Lbr. Co.,* 122 Ark. 227, 183 S. W. 187; *Mahoney* v. *Roberts,* 86 Ark. 130, 110 S. W. 225. Failure to make timely objection constitutes waiver. *Sanders* v. *State,* 175 Ark. 61, 296 S. W. 70. This seems to be in keeping with the majority rule. See, *e. g.,* the following

cases where the husband and wife status is involved. *Olender* v. *United States,* 210 F. 2d 795, 42 ALR 2d 736 (1954) ; *People* v. *Wilkins,* 135 Cal. App. 2d 371, 287 P. 2d 555 (1955); *Hembree* v. *Commonwealth,* 210 Ky. 333, 275 S. W. 812 (1925) ; *Huff* v. *State,* 176 Miss. 443, 169 So. 839 (1936); *State* v. *Hill,* 76 S. W. 2d 1092 (Mo. 1934) ; *State* v. *Palen,* 119 Mont. 600, 178 P. 2d 862 (1947) ; *Parrish* v. *State,* 167 Tex. Crim. 404, 320 S. W. 2d 853 (1959) ; *State* v. *Bledsoe,* 325 S. W. 2d 762 (Mo. 1959). If the rule accords a privilege, it is certainly subject to waiver by one in whose favor it exists. *National Annuity Ass'n* v. *McCall,* 103 Ark. 201, 146 S. W. 125; *Wooten* v. *Wooten,* 176 Ark. 1174, 5 S. W. 2d 340; *Schirmer* v. *Baldwin,* 182 Ark. 581, 32 S. W. 2d 162; 8 Wigmore, Evidence (McNaughton rev. 1961) § 2242, p. 256. Either spouse may claim the privilege, so waiver would have to be by both.

The statute [Ark. Stat. Ann. § 43-2019 (Repl. 1964)] is in derogation of the common law and must be strictly construed. *Jenkins* v. *State,* 191 Ark. 625, 87 S. W. 2d 78. This construction is to be taken most strongly against change in the common law and the intent to change the common law must be clear. Crawford, Statutory Construction, § 228, p. 422. See *Thompson* v. *Treller,* 82 Ark. 247, 101 S. W. 174; *Hackney* v. *Southwest Hotels,* 210 Ark. 234, 195 S. W. 2d 55; *Raney* v. *Gunn,* 221 Ark. 10, 253 S. W. 2d 559; *Thompson* v. *Chadwick,* 221 Ark. 720, 255 S. W. 2d 687. It appears from an examination of § 43-2019 (Act 14 of 1943) that there was no intention to change the common law so as to make absolute the exclusion of one spouse as a witness on trial of the other in a criminal action. If there is doubt from reading the statute, resort to the title of the act will dispel it. The title reads: "An Act To Permit A Husband Or Wife To Testify For The Other In Criminal Actions." Obviously, this was the only change of the common law intended.

This court has already recognized that there may

be a waiver of the rule. In *Dillon* v. *State,* 222 Ark. 435, 261 S. W. 2d 269, a defendant's wife was called as a witness by him. On cross-examination most of the questions propounded were outside the scope of the direct examination, but no objection was made until the examination had been pursued rather extensively. The court said that this interrogation was improper but that the rule did not help the appellant there because his objection was tardy and not specific.

There is a very close analogy to the application of the husband-wife rule as declared by statute and the Dead Man's Statute set out in Schedule Sec. 2. Section 43-2019 says that in a criminal action a husband or wife cannot be called by the opposite party. Schedule 2 says that in actions by or against executors, administrators or guardians, neither party shall be allowed to testify as to transactions with or statements of the testator, intestate or ward, unless called by the opposite party. The language seems just as prohibitory in one statute as the other. The Dead Man's Statute has also been treated as relating to the incompetency of the witness. *Park* v. *Lock,* 48 Ark. 133, 2 S. W. 696; *Bush* v. *Prescott & Northwestern Ry. Co.,* 83 Ark. 210, 103 S. W. 176; *Bradford* v. *Reid,* 202 Ark. 108, 149 S. W. 2d 51; *Harris* v. *Whitworth,* 213 Ark. 480, 211 S. W. 2d 101; *Bush* v. *Evans,* 218 Ark. 470, 236 S. W. 2d 1013. On the other hand, it, too, has been considered to recognize or establish a privilege. *Lisko* v. *Hicks,* 195 Ark. 705, 114 S. W. 2d 9. But it is now clearly established that both the incompetency and the privilege may be waived. *Lisko* v. *Hicks, supra; Harris* v. *Harris,* 225 Ark. 958, 286 S. W. 2d 849; *Smith* v. *Clark,* 219 Ark. 751, 244 S. W. 2d 776. Failure to make timely objection constitutes waiver. *Lisko* v. *Hicks, supra; Brickey* v. *Sullivan,* 208 Ark. 590, 187 S. W. 2d 1; *Carlson* v. *Carlson,* 224 Ark. 284, 273 S. W. 2d 542; *Starbird* v. *Cheatham,* 243 Ark. 181, 419 S. W. 2d 114.

Since the State proposed to call the wife, in this

case, it seems obvious that she waived the privilege. Until a timely objection was made by appellant, he had not claimed any privilege or raised a question of competency of the witness. Here, as in the *McDonald* case, the trial judge promptly sustained the objection. While appellant made his objection in the form of a motion for mistrial, he did not request any admonition to the jury.

I agree that it would have been better to have taken the matter up out of the presence of the jury as suggested by the Supreme Court of South Dakota in holding that just such a procedure as was followed here did not constitute reversible error. *State* v. *Damm*, 62 S. D. 123, 252 N. W. 7 (1933). Certainly we should hesitate to call this action prejudicial error when eminent authority, 8 Wigmore, Evidence § 2243, p. 261 (McNaughton rev. 1961), states:

> ". . . Furthermore, in any event, upon the same principle as under the privilege against self-incrimination (§ 2272 *infra*), the party desiring to compel the spouse to testify should be able at least to call for the testimony and should not be deprived of it until the party spouse formally objects and claims the privilege."

Some courts have held this to be the proper procedure. See, *e. g.*, *People* v. *Wilkins*, 135 Cal. App. 2d 371, 287 P. 2d 555.

While disagreement of the courts is acknowledged, it seems to me that the majority of courts to which the question has been presented have held that there is no prejudicial error. See *People* v. *Chand*, 116 Cal. App. 2d 242, 253 P. 2d 499 (1953); *People* v. *Ward*, 50 Cal. 2d 702, 328 P. 2d 777 (1958); *State* v. *Roby*, 128 Minn. 187, 150 N. W. 793 (1915); *State* v. *Dennis*, 177 Ore. 73, 159 P. 2d 838 (1945); *Commonwealth* v. *Weber*, 167 Pa. 153, 21 Atl. 481 (1895).